**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                                    **CRIMINAL ACTION**

**VERSUS**                                                                          **NO. 13-160**

**SAM MICHELE, III**                                                        **SECTION I**

<u>**ORDER & REASONS**</u>

Before the Court is a petition[1] filed by petitioner, Sam Michele, III ("Michele"), for post-conviction relief pursuant to 28 U.S.C. § 2255.  The government opposes the petition.[2]  For the following reasons, the Court finds that an evidentiary hearing is not necessary and the petition is **DENIED**.

**BACKGROUND**

On January 9, 2013, Michele was charged in count 1 of a 2-count superseding indictment.[3] Count 1 charged that beginning on a date unknown and continuing to on or about July 9, 2013, in the Eastern District of Louisiana and elsewhere, Michele knowingly conspired with others to possess with the intent to distribute five kilograms or more of cocaine hydrochloride, a Schedule II narcotic drug controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.[4] The superseding indictment included a notice of drug forfeiture.[5]

On December 19, 2013, the Court was informed that Michele had entered into a plea

---

[1]R. Doc. No. 222.
[2]R. Doc. No. 228.
[3]R. Doc. No. 52.
[4]R. Doc. No. 32, at 1-2.
[5]R. Doc. No. 32, at 2.

1

agreement with the government in which he agreed to plead guilty to count 1 of the superseding indictment.[6]  In exchange, the government agreed that it would not "bring any other charges in the Eastern District of Louisiana arising from the defendant's violation of the Federal Controlled Substances Act committed prior to July 7, 2013."[7] The government also agreed to dismiss the original indictment and "to file only one bill of information charging the defendant as a multiple offender."[8] The plea agreement contained a waiver of appeal and post-conviction rights.[9]

At the beginning of the December 19, 2013 rearraignment, the Court explained to Michele that if he did not understand any questions, he could ask the Court to explain the question and he could confer with counsel.[10] Michele was sworn[11] and all of his subsequent statements were made under oath. The Court inquired regarding Michele's ability to read.[12] Michele's attorney stated that Michele has "some difficulty" reading, but that counsel had "read to him verbatim the [charging] document, factual basis and the plea agreement, and explained the consequences in the plea agreement to him."[13] Michele stated that he had received a copy of the superseding indictment and that he had either read it or had it read to him.[14] Michele's counsel waived a reading of the

---

[6]R. Doc. No. 97.

[7]R. Doc. No. 97, at 1.

[8]R. Doc. No. 97, at 1. The Court clarified at the rearraignment that, pursuant to Michele's plea agreement, the government had agreed to file a bill of information establishing only one prior drug conviction. R. Doc. No. 188, at 35-36. If the government had filed a bill establishing Michele's two prior felony drug convictions, Michele's statutory sentence would have been a mandatory term of imprisonment of life. 21 U.S.C. § 841(b)(1)(A).

[9]R. Doc. No. 97, at 2-3.

[10]R. Doc. No. 188, at 5.

[11]R. Doc. No. 188, at 4.

[12]R. Doc. No. 188, at 5.

[13]R. Doc. No. 188, at 7.

[14]R. Doc. No. 188, at 11-12.

indictment.[15]

The Court instructed Michele as to count 1 and the elements of that offense.[16] Michele stated that he understood the charge against him and the elements of the offense.[17] The Court informed Michele that, taking into account a prior felony drug conviction established by a superseding bill of information,[18] the maximum possible sentence with respect to count 1 was a mandatory minimum of twenty years' imprisonment up to a maximum of life imprisonment, as well as a fine and a term of supervised release.[19] Michele stated that he fully understood the maximum possible sentence that could be imposed.[20] He also stated that the sentencing guidelines had been explained to him by his counsel and that he understood that the guidelines range had not been calculated, that the guidelines were advisory, and that the Court could depart from the guidelines under certain circumstances.[21]

The Court explained the rights Michele was waiving by pleading guilty, including the right to trial by a jury, and Michele stated that he understood the rights he was giving up.[22] Michele stated under oath that he was pleading guilty because he was, in fact, guilty of the crime charged and because he did the acts charged in the superseding indictment.[23] Michele testified that he had not been influenced or persuaded to plead guilty by either promises or threats made by anyone.[24]

---

[15]R. Doc. No. 188, at 12. Reading of the indictment was also waived at Michele's arraignments as to the original indictment, R. Doc. No. 25, at 1, and superseding indictment, R. Doc. No. 60, at 1.
[16]R. Doc. No. 188, at 17-24.
[17]R. Doc. No. 188, at 24.
[18]R. Doc. No. 93.
[19]R. Doc. No. 188, at 24-25.
[20]R. Doc. No. 188, at 27.
[21]R. Doc. No. 188, at 28-29.
[22]R. Doc. No. 188, at 30-32.
[23]R. Doc. No. 188, at 32.
[24]R. Doc. No. 188, at 33.

3

Michele stated that he had sufficient time to discuss the facts of the case and possible defenses with his attorney and that he was "entirely satisfied with the advice and services" of his attorney.[25]

Counsel for the government summarized the terms of Michele's plea agreement, including the waiver of post-conviction relief except in the case of a sentence imposed in excess of the statutory maximum or if he could establish ineffective assistance of counsel "which directly affected the validity of the plea or the validity of the waiver."[26] Michele verified his signature on the plea agreement.[27]

The Court independently instructed Michele with respect to the appellate and post-conviction relief rights he was waiving in his plea agreement, including the "right to contest your conviction and/or your sentence in any collateral proceeding" pursuant to 28 U.S.C. § 2255, except with respect to a sentence imposed in excess of the statutory maximum, if the superseding indictment did not state an offense, or if Michele could show that ineffective assistance of counsel "directly affected the validity of [his] plea or waiver."[28] The Court also instructed that the waiver of appeal would "not be enforced to bar direct appeal where the superseding indictment . . . did not state an offense and/or where the factual basis for the plea does not show the commission of an offense."[29] Michele stated that he understood the rights that he was waiving.[30] He also stated that he had a chance to discuss

---

[25]R. Doc. No. 188, at 34.

[26]R. Doc. No. 188, at 36. The plea agreement itself states that Michele waived "any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under" 28 U.S.C. § 2255, but specifically retained "the right to bring a post-conviction challenge if he establishes that ineffective assistance of counsel directly affected the validity of this waiver of appeal and collateral challenge rights or the validity of the guilty plea itself." R. Doc. No. 97, at 3.

[27]R. Doc. No. 188, at 37.

[28]R. Doc. No. 188, at 41-45.

[29]R. Doc. No. 188, at 42.

[30]R. Doc. No. 188, at 41-45.

this waiver with counsel, who had explained the waiver to him, and that he was satisfied with the advice he received regarding the waiver.[31] Michele stated that he was satisfied that he understood the waiver and that he entered into the waiver voluntarily and of his own free will.[32] He stated that he had no questions about the waiver and that he was not coerced or promised anything to enter into it.[33] He agreed with the government's summary of the plea agreement and stated that it was his understanding of his plea agreement.[34]

Michele stated that he understood that any discussions with anyone regarding sentencing guidelines were merely rough estimates not binding on the Court, and that no one had made any prediction or promise to him as to what his sentence would be.[35] Counsel for the government, counsel for Michele, and Michele himself stated that no other plea offers had been made.[36] Michele had no questions for his counsel or counsel for the government about any other or different promises, assurances, or secret agreements "made in an effort to persuade [him] to plead guilty."[37]

Michele's counsel confirmed that he "had full opportunity to investigate the facts of and the law applicable to the case, as well as any possible defenses [Michele] may have, and to advise and counsel with [Michele]."[38] Michele's counsel was also satisfied that "Michele is pleading guilty voluntarily and understandingly and with full knowledge of the consequences of his . . . plea."[39] Michele stated that he heard and understood those statements by his counsel and that he had no

---

[31]R. Doc. No. 188, at 45.
[32]R. Doc. No. 188, at 46.
[33]R. Doc. No. 188, at 46.
[34]R. Doc. No. 188, at 49.
[35]R. Doc. No. 188, at 51.
[36]R. Doc. No. 188, at 52-53.
[37]R. Doc. No. 188, at 53.
[38]R. Doc. No. 188, at 54-55.
[39]R. Doc. No. 188, at 55.

comments to make concerning those statements or any other answers or statements made by his counsel.[40]

At rearraignment, counsel for the government read the factual basis[41] into the record.[42] As stated in the factual basis, Michele was implicated in the course of an investigation and:

> Agents traveled to Sam Michele, III's residence, arrested him and advised him of his *Miranda* rights. Sam Michele, III then gave a statement in which he admitted to providing the cocaine to [Jeffrey] Michele. Sam Michele, III identified his source of supply from Houston, Texas. Sam Michele, III admitted to the agents that his source delivered two kilograms of cocaine to him in Hammond, Louisiana approximately 8-10 times. Agents then brought Sam Michele, III to the police station. While at the police station, Sam Michele, III gave a videotaped statement in which he reaffirmed that he provided the eleven ounces of cocaine to [Jeffrey] Michele. He also reiterated the identity of his source, acknowledged again that he received two kilograms of cocaine from the source about eight to ten times and that the source would "front" him the cocaine and that he would pay the source of supply approximately two weeks later.[43]

The factual basis also detailed a series of trips to and from Houston, Texas, designed to deliver money and retrieve cocaine made by "mules" acting on Michele's behalf[44]

Michele's counsel stated that he had an opportunity to read and review the factual basis with Michele, and Michele agreed under oath that he had signed the factual basis.[45] Michele stated that he did not need additional time to review the factual basis or the plea agreement or to discuss any other matters with his counsel.[46] Michele had no questions for the government or his counsel, stated that he understood the evidence, that the government's statements were correct, and that he did the

---

[40]R. Doc. No. 188, at 56-57.
[41]R. Doc. No. 98.
[42]R. Doc. No. 188, at 57-69.
[43]R. Doc. No. 98, at 5.
[44]R. Doc. No. 98, at 5-7.
[45]R. Doc. No. 188, at 69.
[46]R. Doc. No. 188, at 75-76.

things stated in the factual basis.[47] Michele confirmed that he fully understood the charges against him and the consequences of his guilty plea.[48] He stated under oath that he was pleading guilty voluntarily and of his own free will because he was, in fact, guilty.[49] Accordingly, the Court accepted his guilty plea and adjudged Michele guilty of count 1 of the superseding indictment.[50]

On April 24, 2014, the Court sentenced Michele to a total term of imprisonment of 180 months.[51] The sentence imposed as to count 1 was below the statutory mandatory minimum because the Court granted the motion filed by the government pursuant to U.S.S.G. § 5K1.1.[52] Michele's presentence investigation report included a four-level leadership enhancement pursuant to U.S.S.G. § 3B1.1(a), to which no objection was filed. The Court imposed a sentence of 180 months in part because the Court concluded that Sam Michele was more culpable than Jeffrey Michele who received a sentence below 180 months.[53]

Michele appealed his conviction and sentence. On appeal, his appointed counsel argued:

> that his first trial counsel, Garrison Jordan, was ineffective because counsel did not argue that Michele was not competent to enter a guilty plea and counsel did not challenge the sentencing enhancement based on Michele's alleged role as a leader or organizer in the offense. He asserts that, in view of his mental disability and his inability to read or write, his counsel should have argued that he was not capable of being a leader or organizer of the offense and that he was merely carrying out the

---

[47]R. Doc. No. 188, at 76-77.

[48]R. Doc. No. 188, at 77-78.

[49]R. Doc. No. 188, at 78.

[50]R. Doc. No. 188, at 80.

[51]R. Doc. No. 167, at 2.

[52]R. Doc. No 185, at 4 (under seal). Although Michele's sentencing hearing was conducted under seal, the Court refers to the grant of the 5K1.1 motion because Michele's appellate counsel referred extensively to such grant in Michele's appellate briefing which was not filed under seal. No party has requested that any portion of this § 2255 proceeding be conducted under seal.

[53]R. Doc. No. 185, at 13-14 (under seal). The sentence imposed was a twenty-five percent departure from the twenty-year mandatory minimum. The government had suggested a forty percent departure from the mandatory minimum. R. Doc. No. 185, at 8 (under seal).

instructions of his brother.

*United States v. Michele*, 600 F. App'x 954, 954 (5th Cir. 2015). In an opinion dated May 4, 2015, the Fifth Circuit noted that "Michele did not raise these ineffective assistance claims in the district court at any time." *Id.* Accordingly, "[b]ecause the record [was] not sufficiently developed to allow for a fair consideration of these claims," the Fifth Circuit declined "to consider them on direct appeal without prejudice to Michele's right to raise them on collateral review." *Id.* at 954-55. The Fifth Circuit affirmed Michele's conviction and sentence.

Michele filed this petition pursuant to 28 U.S.C. § 2255 on January 20, 2016.[54] The government filed its opposition on February 25, 2016,[55] to which Michele filed a reply on March 18, 2016.[56] The matter is now under submission and ripe for a decision.

## LAW AND ANALYSIS

### I.    Applicable Standards

#### A.    28 U.S.C. § 2255

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426-27 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*,

---

[54]R. Doc. No. 222.
[55]R. Doc. No. 228.
[56]R. Doc. No. 234.

8

183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222-23 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)). Pursuant to § 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a § 2255 proceeding. *Massaro*, 538 U.S. at 509; *see also, e.g.*, *United States v. Johnson*, 124 F. App'x 914, 915 (5th Cir. 2005).

## B.      Ineffective Assistance of Counsel

The United States Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court articulated a two-part test that requires the petitioner to prove (1) deficient performance and (2) resulting

prejudice. *Id.* at 697. Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689). "Given the almost infinite variety of possible trial techniques and tactics available to counsel, [the Fifth] Circuit is careful not to second guess legitimate strategic choices." *United States v. McGrew*, 560 F. App'x 342, 347 (5th Cir. 2014) (quoting *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993)).

The second prong of the *Strickland* test looks to the prejudice caused by counsel's allegedly deficient performance. This requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is that which renders the proceeding unfair or unreliable, *i.e.*, undermines confidence in its outcome." *Williamson*, 183 F.3d at 463.

A petitioner who pleaded guilty must show the outcome of the plea process would have been different with competent advice and "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). In addition, "[a]ny additional amount of jail time is significant for purposes of showing prejudice." *See United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (citing *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004)).

"An attorney's failure to raise a meritless argument thus cannot form the basis of a successful

ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *United States v. Berthelot*, 326 F. App'x 795, 797 (5th Cir. 2009) (holding that counsel was not ineffective because there had been no "legitimate basis for counsel to challenge the legality of the search" of defendant's residence).

## II.    Discussion

### A.    Summary of Michele's Arguments

Michele alleges the following in his petition:

Ineffective Assistance of Trial Counsel: My attorney allowed me to be interrogated & sign a confession without the presence of counsel although he has known me for years, knows I can barely read and write & knows I receive payments from the United States Government for mental disability. I asked for a new attorney, but the damage had been done. My plea was used to support a finding in the PSR that I was the organizer of the operation. The trial judge adopted the PSR & relied on its finding that I was the most culpable defendant & the "main man" to impose a sentence 3 years longer than that sought by the United States, despite the arguments of my new attorney.[57]

He also characterizes the issues presented as "Ineffective assistance of trial counsel: Did Sam Michele's first attorney render ineffective counsel, considering both (a) the degree of duty an attorney owes a client of limited mental capacity, and (b) whether the attorney has rendered even minimal assistance or has affirmatively injured this client's case."[58] Such quote is a direct quotation

---

[57]R. Doc. No. 222, at 5-6. In response to a letter sent by Michele, the Court ordered a hearing to determine counsel. R. Doc. No. 110. At the hearing to determine counsel, new counsel was appointed to represent Michele for sentencing purposes. R. Doc. Nos. 113, 114, 115.

[58]R. Doc. No. 222, at 4.

of the statement of the issue framed in the appellate brief filed on Michele's behalf.[59] Accordingly, the Court will construe this as an attempt to incorporate by reference the ineffective assistance of counsel issues briefed before the Fifth Circuit, which characterized Michele's claim on appeal as an argument that counsel "was ineffective because counsel did not argue that Michele was not competent to enter a guilty plea and counsel did not challenge the sentencing enhancement based on Michele's alleged role as a leader or organizer in the offense." *Michele*, 600 F. App'x at 954.

In his reply, Michele also contends that (1) his post-arrest statement was made upon threat of beating, (2) he has never been to Houston and he does not know anyone from Houston, and (3) his brother, Jeffrey Michele, was the real "main man" in the conspiracy.[60] With respect to his guilty plea and waiver of post-conviction relief, Michele asserts that his waiver was based on bad advice from prior counsel:

> As for the [plea] agreement, yes Michele did waive his rights to appeal or collaterally challenge his conviction and sentence, but as you very well know this was done at that erroneous advice of counsel for the defense. Lets just cut through the chase, Michele's counsel was deficient in his performance, it was not a sound plea strategy to have his client sign a plea and/or waiver of collateral attack, when the deficiencies in the prosecutions case is so 'plain' in regards to the fact(s) above, Even a layman can see through the muck in this trumped up case." The Petitioner claims the only evidence the prosecution has to support its claims, that the Petitioner is or/was this leader, organizer, in this alleged drug [enterprise], is all these so called associates statements and the coerced admission to DEA agents, [whose] [credibility] is at issue.[61]

## B.     Waiver of Post-Conviction Relief

As a threshold matter, the government invokes Michele's waiver of post-conviction relief

---

[59]Appellate brief at p. 29, *United States v. Michele*, No. 14-30413 (5th Cir.).
[60]R. Doc. No. 234, at 2-3.
[61]R. Doc. No. 234, at 2-3.

in the plea agreement as a complete bar to all of his claims for post-conviction relief.[62]  In the alternative, the government argues that to the extent that Michele has attempted to establish ineffective assistance of counsel affecting the validity of his guilty plea or waiver of post-conviction relief, Michele has failed to do so.[63]

A defendant may waive his right to 28 U.S.C. § 2255 post-conviction relief if the waiver was knowing and voluntary. *United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002) (citing *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)). For such a waiver to be knowing and voluntary, a defendant must understand that he has a right to collateral review and that he is giving up that right. *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011) (citation and quotation omitted).

The rearraignment transcript establishes that Michele knowingly and voluntarily pleaded guilty and waived post-conviction relief. The Court thoroughly explained to Michele the charge against him, the rights he would waive by pleading guilty and, in particular, his right to seek appellate and post-conviction relief. At all times, Michele stated under oath that he understood those rights. Michele stated under oath that he was pleading guilty of his own free will because he was in fact guilty. Michele does not directly attempt to retract his sworn statements that he understood those rights and voluntarily waived them, nor can he easily do so. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("'Solemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Gonzalez-Archuleta*, 507

---

[62]R. Doc. No. 228, at 4-5. Waivers of post-conviction relief "must be asserted by the government or be deemed waived, functioning much like affirmative defenses." *United States v. Del Toro-Alejandre*, 489 F.3d 721, 722 (5th Cir. 2007).
[63]R. Doc. No. 228, at 6-8.

F. App'x 441, 442 (5th Cir. 2013) ("We bear in mind that 'solemn declarations in open court carry a strong presumption of verity,' and a defendant ordinarily may not refute testimony given under oath at a plea hearing.") (citations omitted) (quoting *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009)).

"[A]n ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself." *White*, 307 F.3d at 343. A "knowing and intelligent waiver" may not be "easily evaded" merely by raising an ineffective assistance of counsel claim. *Id.* at 344. Where a defendant knowingly and voluntarily agrees to a waiver, despite alleged ineffective assistance of counsel, "the guilty plea sustains the conviction and sentence and the waiver can be enforced." *Id.* at 343-44.

Liberally construing Michele's petition, reply, and appellate brief, the Court can identify only two claims of ineffective assistance of counsel arguably implicating the knowing and voluntary nature of his plea of guilty and waiver of post-conviction relief: (1) the suggestion that counsel did not question his competence based on his mental disability and inability to read , and (2) his assertion that he pleaded guilty on the erroneous advice of counsel. The Court rejects both contentions.

### 1)    Ineffective Assistance: Failure to Question Michele's Competence

First, the Fifth Circuit declined "without prejudice to Michele's right to raise . . . on collateral review" his claim that counsel "was ineffective because counsel did not argue that Michele was not competent to enter a guilty plea." *Michele*, 600 F. App'x at 954. Construing his petition liberally, Michele has renewed that claim by asserting that counsel "[knew] I can barely read and write &

[knew] I receive payments from the United States Government for mental disability."[64] This claim of ineffective assistance of counsel based on counsel's failure to question his competence to plead guilty implicates the validity of his guilty plea, and therefore it survives the waiver. *See White*, 307 F.3d at 343. However, the Court finds that Michele has not established either deficient performance or prejudice as to this claim of ineffective assistance of counsel. *See, e.g.*, *Kimler*, 167 F.3d at 893.

The record discloses no basis upon which counsel could have successfully challenged Michele's competence to plead guilty. The ability to read an indictment or plea agreement is not a prerequisite for a guilty plea to be knowing and voluntary. For example, in *United States v. Castro*, in order to avoid an appellate waiver the defendant asserted "that he was in a special education program before dropping out of high school and assert[ed] that he was unable to read or understand the indictment and the plea agreement." 339 F. App'x 378, 380 (5th Cir. 2009). After reviewing the rearraignment transcript, the Fifth Circuit noted that Castro "never indicated that he did not understand the charges against him or the plea agreement," "never asked any questions," stated that he was "pleading guilty because he was guilty and for no other reason" and failed to ask any questions indicating a lack of understanding. *Id.* at 381 (internal quotation marks omitted). Accordingly, the Fifth Circuit found "no evidentiary support in the record for Castro's claim that his plea was unknowing or involuntary." *Id.* at 382.

Here, as in *Castro*, Michele never asked any questions or otherwise indicated a lack of

---

[64]R. Doc. No. 222, at 5-6. Michele asserts the facts of his illiteracy and mental disability in support of a claim that counsel was ineffective for allowing him to give a post-arrest statement. R. Doc. No. 222, at 5-6. That particular ineffective assistance of counsel claim does not implicate the validity of Michele's subsequent knowing and voluntary guilty plea and waiver of post-conviction relief; nonetheless, construing his pleadings liberally, the Court will examine whether the facts he asserts in support of that claim, i.e. his illiteracy and mental disability, could support a claim that counsel was ineffective for failing to argue that Michele was not competent to plead guilty.

understanding of the proceedings, the charge against him, or the rights he was waiving by pleading guilty. *See id.* at 381-82.[65] The rearraignment transcript establishes that Michele's counsel had read him the superseding indictment, the factual basis, and the plea agreement.[66] Michele stated that he had either read the superseding indictment or had it read to him, and that he agreed with the government's summary of the plea agreement.[67] After the factual basis was read into the record verbatim, Michele confirmed that he did the things stated in the factual basis which he had signed.[68] Furthermore, the Court fully apprised Michele of the charge against him and the rights he was waiving by pleading guilty.[69] The Court can find no evidence in the record to suggest that Michele was not competent to plead, and Michele submits no new evidence to suggest that his limited literacy or purported "mental disability" had any effect on his competence. Accordingly, the Court finds that this claim does not undermine his knowing and voluntary guilty plea and waiver of post-conviction relief and that Michele has not demonstrated *Strickland* prejudice or deficient performance.

### 2)       Ineffective Assistance of Counsel: Erroneous Advice to Plead Guilty

Second, Michele asserts that "yes [he] did waive his rights to appeal or collaterally challenge his conviction and sentence, but as you very well know this was done at the erroneous advice of

---

[65]Furthermore, Michele's PSR states that he "reported having no history of mental health or emotion problems," and contains no other reference to any purported mental disability or other indication of a lack of competence. *See* R. Doc. No. 124, at 21 (under seal). Michele filed no objections to his PSR relevant to his literacy, mental disability, or competence. R. Doc. No. 124, at 26.

[66]R. Doc. No. 188, at 7
[67]R. Doc. No. 188, at 11-12, 49.
[68]R. Doc. No. 188, at 57-69, 76-77.
[69]R. Doc. No. 188, at 17-24, 30-32.

counsel for the defense."[70] Michele contends that counsel's performance was deficient because "it was not a sound plea strategy to have his client sign a plea and/or waiver of collateral attack, when the deficiencies in the prosecutions case is so 'plain' in regards to the fact(s) above, [e]ven a layman can see through the muck in this trumped up case."[71] Specifically, he claims that the government lacked evidence that he "is or/was this leader, organizer, in this alleged drug [enterprise]."[72]

Such arguments of ineffective assistance of counsel do not implicate the validity of Michele's knowing and voluntary guilty plea and waiver. "Whether a plea is knowing depends on whether the defendant understood the consequences of his plea; whether it was voluntary depends on whether the plea was induced by threats or improper promises." *United States v. Herrod*, 595 F. App'x 402, 412 (5th Cir. 2015). Michele's assertion that pleading guilty and waiving post-conviction relief "was not a sound plea strategy" does not suggest either that he did not understand the consequences of his plea or that his plea was induced by threats or improper promises. Nor does it implicate his knowing and voluntary waiver of post-conviction relief. *See United States v. Flores*, No. 15-50149, 2016 WL 1072181, at *1 (5th Cir. Mar. 17, 2016) ("The waiver is both knowing and voluntary if [defendant] indicated that he had read and understood the plea agreement, which includes an explicit, unambiguous waiver of appeal.").

Nonetheless, the Court will assume for the sake of argument that this purported "erroneous advice" as to "sound plea strategy" somehow calls into question the validity of Michele's knowing and voluntary guilty plea and post-conviction relief waiver and therefore potentially survives the

---

[70]R. Doc. No. 234, at 2.
[71]R. Doc. No. 234, at 3.
[72]R. Doc. No. 234, at 3; *see also id.* (requesting "an evidentiary hearing to prove or disprove The Petitioner's leadership role").

waiver. Operating under that assumption, the Court finds that Michele has not established either deficient performance or prejudice as to this claim of ineffective assistance of counsel

With respect to deficient performance, the Court is not persuaded that counsel's strategy was unconstitutionally unsound. As noted above, if Michele had proceeded to trial the government could have filed a bill of information establishing that Michele had two prior felony drug convictions which would have increased his sentencing exposure to a mandatory minimum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A). The plea agreement reduced that exposure to a mandatory minimum of twenty years' imprisonment and left open the possibility for a § 5K1.1 motion.[73] On the other hand, Michele does not assert that he was innocent of the conspiracy, but only that the government had weak evidence that he was the *leader* of the conspiracy. In these circumstances, comparing the risk inherent in proceeding to trial with the benefits of Michele's plea agreement, the Court is not persuaded that prior counsel's advice to plead guilty fell outside "the wide range of reasonable professional assistance" such that it was constitutionally deficient. Accordingly, any ineffective assistance claim based on counsel's recommendation to plead guilty fails on the first *Strickland* prong.

The Court also finds that Michele fails on the second *Strickland* prong because he has not shown that he would not have pleaded guilty "but for" the purportedly erroneous advice about the strength of the government's evidence of his leadership role. *See Lafler*, 132 S. Ct. at 1384-85. As

---

[73]The Court also notes that Michele's sentencing guidelines range *with* a four-level leadership enhancement was still less than the statutory mandatory minimum sentence of twenty years' imprisonment. *See* R. Doc. No. 124, at 22. Accordingly, pleading guilty and potentially receiving the benefit of a § 5K1.1 motion was the only way that Michele could have avoided a mandatory minimum sentence of twenty years' imprisonment or a mandatory minimum sentence of life if, as set forth above, the government filed a bill of information establishing two prior felony drug convictions.

noted above, in his petition and briefing, Michele appears to assert that counsel was ineffective when he advised Michele to plead guilty notwithstanding the fact that the government had weak evidence of his leadership role. R. Doc. No. 234, at 3. However, Michele does not claim that he was innocent of conspiring to possess with the intent to distribute heroin. Michele fails to explain why he would have proceeded to trial if counsel had advised him that the government's evidence was weak solely with respect to whether he was the leader of the conspiracy. Put another way, Michele has not shown how purportedly erroneous advice about the government's evidence of his *degree* of culpability, but not the *fact* of his guilt, affected his decision to plead guilty. Accordingly, he has not established *Strickland* prejudice.

Michele has established neither deficient performance nor prejudice with respect to this claim of ineffective assistance of counsel. Accordingly, the Court finds that this claim does not undermine his knowing and voluntary guilty plea and waiver of post-conviction relief.

### 3)      Remaining Claims

Having concluded that Michele has not established ineffective assistance of counsel affecting the validity of his plea or waiver, the Court agrees with the government that the waiver is enforceable. Michele waived "any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under" 28 U.S.C. § 2255 "and any other collateral challenges to his sentence of any kind."[74] He reserved only the right "to bring a direct appeal of any sentence imposed in excess of the statutory maximum," "to bring a post-conviction challenge if he establishes that ineffective assistance of counsel directly affected the validity of this waiver of

---

[74]R. Doc. No. 97, at 3.

appeal and collateral challenge rights or the validity of the guilty plea itself,"[75] and to appeal if "the superseding indictment . . . did not state an offense and/or where the factual basis for the plea does not show the commission of an offense."[76]

Michele's remaining claims do not fall within those exceptions. His claims based on counsel's failure "to challenge the sentencing enhancement based on Michele's alleged role as a leader or organizer in the offense" on the basis that Michele "was not capable of being a leader or organizer of the offense and that he was merely carrying out the instructions of his brother,"[77] 600 F. App'x at 954, are necessarily based on post-plea events do not implicate the validity of his plea or waiver. Likewise, his complaint regarding counsel's performance with respect to his post-arrest statement[78] "does not bear on the validity of his waiver or plea." *See United States v. Townsend*, 2015 WL 2353077, at *2 (S.D. Miss. May 15, 2015).

## CONCLUSION

An evidentiary hearing is required on defendant's petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  For the foregoing reasons, the petition and the record of the case conclusively demonstrate that petitioner is not entitled to relief.  *See Bartholomew*, 974 F.2d at 41.  Accordingly,

---

[75]R. Doc. No. 97, at 3.

[76]R. Doc. No. 188, at 42.

[77]The Court also notes that § 2255 relief does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462.

[78]R. Doc. No. 222, at 5-6; R. Doc. No. 234, at 1-2.

**IT IS ORDERED** that Michele's petition is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, April 27, 2016.

**LANCE M. AFFRICK**
**UNITED STATES DISTRICT JUDGE**

21