UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 13-160** |
| **SAM MICHELE, III** | **SECTION I** |

### ORDER & REASONS

Before the Court is defendant Sam Michele, III's ("Michele") motion[1] for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The government opposes the motion.[2] For the following reasons, the motion is denied.

### I.

On December 19, 2013, Michele pled guilty to count one of a superseding indictment, which charged him with conspiracy to possess with the intent to distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.[3] This Court sentenced Michele to a term of 180 months in the custody of the Bureau of Prisons ("BOP") and a ten-year term of supervised release.[4] Michele's projected release date is April 26, 2024, and he is currently housed at Yazoo City Low FCI.[5]

---

[1] R. Doc. No. 256.
[2] R. Doc. No. 260.
[3] R. Doc. No. 94; R. Doc. No. 32, at 1–2. .
[4] R. Doc. No. 167, at 2–3.
[5] *See* https://www.bop.gov/inmateloc/ (last visited August 8, 2020).

Michele filed a notice of appeal from the judgment of conviction and sentence to the United States Fifth Circuit Court of Appeals on April 30, 2014.[6] The Fifth Circuit declined to consider Michele's ineffective assistance of counsel claim and affirmed Michele's conviction and sentence.[7]

On November 9, 2015, this Court reduced Michele's sentence to 151 months pursuant to Amendment 782 to the United States Sentencing Guidelines.[8]

Michele now requests compassionate release pursuant to the First Step Act.[9] Michele argues that his medical conditions as well as the alleged failure of the BOP to contain the spread of COVID-19 at Yazoo City Low FCI constitute extraordinary and compelling reasons for a sentence reduction.[10] Specifically, Michele alleges that he suffers from asthma and only has one kidney, which would pose serious health complications if he contracted COVID-19.[11] Michele also contends that he needs to be released in order to care for his mother, who is undergoing chemotherapy treatment for a terminal cancer and, he says, has no one else to care for her.[12]

Michele further claims that he is at greater risk of COVID-19 infection and death because of the conditions at Yazoo City Low FCI.[13] Michele observes, based on information provided on the BOP's website, that as of July 10, 2020, Yazoo City Low

---

[6] R. Doc. No. 169.
[7] R. Doc. No. 203.
[8] R. Doc. No. 210.
[9] R. Doc. No. 256.
[10] R. Doc. No. 256-3, at 6–7.
[11] *Id.* at 6.
[12] *Id.* at 6; R. Doc. No. 256, at 3.
[13] R. Doc. No. 256-3, at 6–7.

FCI had no inmates and one staff member who had tested positive for COVID-19.[14] Michele contends that "[t]here is no reason to believe the Yazoo facility has instituted or will institute measures that will adequately protect [Michele] from the serious complications he could suffer if he contracts COVID-19," evidenced by the fact that inmates and staff members at Yazoo City have continued to test positive for the disease.[15]

Finally, Michele avers that he would not be a danger to society if released because his crime of conviction was non-violent, he has no history of violent conduct, even while incarcerated, and his last incident report was thirty-six months ago.[16] In support of his request for compassionate release, Michele provides a copy of his written request for compassionate release to the warden of the facility at which he is being held, dated May 15, 2020.[17]

In light of these alleged circumstances, Michele asks that the Court reduce his sentence to time served or, alternatively, order that he be released to home confinement to serve the remainder of his sentence.[18]

---

[14] *Id.* at 7.
[15] *Id.*
[16] *Id.* at 8.
[17] R. Doc. No. 256-1.
[18] R. Doc. No. 256-3, at 9. The Court is not authorized to grant Michele's request to serve the remainder of his sentence in home confinement. The BOP has exclusive authority to determine where a prisoner is housed and the terms of a prisoner's pre-release custody. *See* 18 U.S.C. § 3621(b) ("The *Bureau of Prisons* shall designate the place of the prisoner's imprisonment[.]") (emphasis added); § 3622 ("The *Bureau of Prisons* may release a prisoner from the place of his imprisonment for a limited period, [under certain circumstances].") (emphasis added).

The government opposes Michele's motion and argues that it should be denied because Michele's medical conditions are not an "extraordinary and compelling" reason that warrants his release.[19] The government argues that Michele has failed to establish that having only one kidney diminishes his ability to provide self-care while incarcerated.[20] The government also observes that Michele's BOP medical records do not reflect that he is currently being treated or has ever been treated for asthma.[21] The government describes BOP's general response to COVID-19 and outlines the various precautions being taken to safeguard inmates nationwide.[22]

The government disputes Michele's characterization of the conviction for which he is currently incarcerated as "non-violent"; Michele was an organizer/leader of a multi-kilogram cocaine conspiracy, and he continued his drug trafficking activities

---

Hence, if Michele wishes to continue to pursue this method of release, he must do so through the administrative procedures provided by the BOP. The proper vehicle to challenge the BOP's administrative decisions is a petition pursuant to 28 U.S.C. § 2241. A challenge to an administrative decision of the BOP pursuant to § 2241 must be filed in the district where Michele is incarcerated. *See* 28 U.S.C. § 2241(a). Yazoo City Low FCI, where Michele is incarcerated, sits in the Southern District of Mississippi and is, therefore, outside the Court's jurisdiction. *See* https://www.bop.gov/locations/institutions/yaz/ (last visited August 8, 2020).

[19] R. Doc. No. 260, at 17–18.

[20] *Id*. at 18. The government highlights that Michele's medical records do not indicate that he has suffered complications from only having one kidney while incarcerated. *Id*.

[21] *Id*. The government also points to Michele's characterization of his illness as "light asthma" in his administrative request for compassionate release and notes that, according to the Centers for Disease Control and Prevention, a person's asthma must be considered moderate or severe to increase risk for severe illness from COVID-19. *Id*. at 18–19 (citing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. (last visited August 12, 2020)); *see* R. Doc. No. 260-3, at 1.

[22] R. Doc. No. 260, at 2–6.

from jail after he was arrested.[23] The government also notes that Michele has been sanctioned while incarcerated for possession of tobacco and "interfering with staff."[24]

## II.

In relevant part, 18 U.S.C. § 3582(c)(1)(A)(i) provides that a court may not modify a term of imprisonment unless a motion is made after the prisoner has exhausted his administrative remedies and the court, after considering the factors set forth in 18 U.S.C. § 3553(a), finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." *Id*.

The Sentencing Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13. Family circumstances may also serve as a basis for compassionate release if the caregiver of a defendant's minor child has died or become incapacitated, or if a defendant's spouse or registered partner has become incapacitated and the defendant is the only available caregiver for that person. *Id*.

---

[23] *Id*. at 22.
[24] *Id*.

5

Although, historically, sentence reductions could be ordered only upon a motion by the Director of the BOP, the First Step Act of 2018 amended the statute to additionally allow prisoners to petition the Court "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act and, consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. § 3582(c)(1)(A) as amended. The relevant policy statement continues to plainly provide that a term of imprisonment may be reduced only upon a motion by the Director of the BOP upon a finding of extraordinary circumstances warranting a sentence reduction and a determination that the defendant is not a danger to the safety of any person or the community at large. U.S.S.G. § 1B1.13 cmt. n.4. This discrepancy has been recognized by many courts. *See United States v. Perdigao,* 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (collecting cases).

Many courts have concluded that this discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). These district courts have found that they have discretion to determine what constitutes "extraordinary and compelling reasons" on a case by case basis, and reliance on the policy statement may

6

be helpful, but not dispositive. *See id.* ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."); *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) ("[W]hen a defendant brings a motion for a sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)–(C) warrant granting relief.").

Accordingly, the Court will consider whether Michele has presented the Court with evidence that "extraordinary and compelling reasons" warrant compassionate release and that he does not pose a danger to the safety of any other person or the community, all in light of the § 3553(a) factors. *See* 18 U.S.C. § 3553(a).

### A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

Michele sent an email to the warden of the facility at which he is being held on May 15, 2020.[25] More than thirty days have elapsed, and the warden has still not

---

[25] R. Doc. No. 260-3.

acknowledged or responded to the request.[26] The government concedes that Michele has exhausted his administrative remedies.[27] Accordingly, the Court has jurisdiction to consider Michele's motion. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Mosely*, No. 09-262, 2020 WL 3415769, at *1 (E.D. La. June 22, 2020) (Vance, J.) (finding that the defendant exhausted his administrative remedies when the government conceded as much and the warden had still not acknowledged or responded to the defendant's request more than thirty days after such request was made).

### B. Extraordinary and Compelling Reasons

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction of Michele's sentence. *See United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.); *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the

---

[26] *See* R. Doc. No. 260, at 9.
[27] *Id.* at 9, 12–13.

environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Michele claims that his asthma, combined with having only one kidney, puts him at severe risk of illness if he contracts COVID-19.[28] As the government observes, Michele's BOP medical records do not reflect that he has ever been treated for asthma or complained of respiratory problems.[29] While Michele's medical records confirm that he has one kidney, they do not report that he has suffered any health complications as a result.[30]

Accordingly, Michele has failed to establish that he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of [his] correctional facility." U.S.S.G. § 1B1.13 cmt. n.1; *see United States of America v. Sarah Paxton*, No. 17-121, 2020 WL 4498832, at *2 (W.D. La. Aug. 4, 2020) (holding that the defendant failed to meet her burden of showing entitlement to a sentence reduction when she "claim[ed] to have a history of severe asthma with occasional flare-ups" but provided no evidence of this condition); *United States v. Pagan Zapata*, No. 18-235, 2020 WL 4464660, at *2 (N.D. Tex. Aug. 3, 2020) (finding that the defendant's asthma did not constitute an extraordinary and compelling reason for release because, although he reported

---

[28] R. Doc. No. 256-3, at 6.
[29] *See* R. Doc. No. 260-4. Michele's presentence investigation report similarly does not mention that he suffers from asthma. Michele reported being in good physical condition with the exception of a history of rheumatoid arthritis. *See* R. Doc. No. 124, at 21 ¶ 106.
[30] *See* R. Doc. No. 260-4.

9

having asthma to the Court before his sentencing, he failed to provide recent medical records supporting his claim that the illness severely worsened while in BOP custody); *United States v. Delgado*, No. 17-242, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020) (asserting that records are a necessity in cases like this one because the Court "must consider every prisoner individually and [is] cautious about making blanket pronouncements that [particular] categories of prisoners . . . warrant compassionate release, even given the unique circumstances of the COVID-19 pandemic"); *see also United States v. Curry*, No. 10-111, 2020 WL 4201646, at *2 (E.D. La. July 22, 2020) (Vance, J.) ("Even assuming [the defendant] is afflicted with [severe asthma, hypertension, high cholesterol, and PTSD], none places him on an 'end of life' trajectory; nor do these conditions 'substantially diminish[] [his ability] to provide self-care within the environment of a correctional facility' as the Guidelines provide.") (quoting U.S.S.G. § 1B1.13, cmt n.1(A)).

Michele's family circumstances similarly do not warrant compassionate release. While the Court understands Michele's desire to care for his mother, this is not a case in which he is the only available caregiver for a minor child or registered partner or spouse, as necessitated by the policy statement. *See* U.S.S.G. § 1B1.13, cmt. n.1(C)); *United States v. Crandle*, No. 10-35, 2020 WL 2188865, at *2 (M.D. La. May 6, 2020) (holding that a defendant's need to care for his elderly, ailing parents was not an extraordinary and compelling reason to reduce his sentence); *United States v. Ingram*, No. 14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("While the Court empathizes with the Ingram family's difficult situation and understands

10

that Mrs. Ingram's medical conditions are no doubt serious, family circumstances that constitute 'extraordinary and compelling reasons' simply do not include Ingram's mother. Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

Michele's concerns regarding COVID-19 also do not warrant a reduction of his sentence. BOP is undertaking measures to curb the spread of COVID-19 and to limit inmates' risk of contracting it.[31] Michele has alleged only general concerns that the Yazoo facilities are not adequately containing the spread of COVID-19 and that being in a carceral setting raises the risk of COVID-19 infection.[32] Numerous courts have concluded that such broad allegations do not warrant a sentence reduction under § 3582. *See United States v. Clark*, No. 17-85, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the *fear* of contracting a communicable disease warrants a sentence modification."); *United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has

---

[31] *See* R. Doc. No. 260, at 2–6.
[32] *See* R. Doc. No. 256-3, at 6–7.

11

also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); *United States v. Emmons*, No. 16-98, 2020 WL 3086606, at *2 (S.D. Miss. June 10, 2020) ("Were such concerns sufficient, every federal prisoner would be entitled to a sentence reduction under § 3582(c)(1)(A).").

While the Court is alert to the risks of COVID-19 infection in correctional facilities, Michele has also not demonstrated that BOP's response to the COVID-19 pandemic and the protocols it has implemented to curtail the spread of the virus are inadequate.[33] Moreover, the existence of COVID-19 at Yazoo City Low FCI alone cannot independently justify compassionate release.[34] *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

### C. Safety to Others and the Community

Even if the Court were to find that Michele's circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not

---

[33] As the government advised, BOP has implemented revised preventative measures for all institutions, including quarantine and isolation procedures, to require that all newly-admitted inmates be assessed using a screening tool and temperature check. R. Doc. No. 260, at 2–6; *see BOP Implementing Modified Operations*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited August 8, 2020). Asymptomatic inmates are placed in quarantine for a minimum of 14 days or until cleared by medical staff, and symptomatic inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation. *Id.*

[34] As of August 11, 2020, at Yazoo City Low FCI, no inmates and four staff members who have been tested are positive for COVID-19, and ninety-five inmates and nine staff members have recovered. Two inmates have died from it. *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited August 11, 2020).

demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

In the factual basis for the plea agreement, pursuant to which Michele is now incarcerated, he agreed that he was responsible for purchasing and/or distributing at least fifteen kilograms of cocaine and that he continued to run his drug trafficking operation from jail by instructing someone to collect money he was owed for previous cocaine sales.[35] The presentence investigation report, to which Michele raised no objections, concluded that Michele was the leader and organizer of the conspiracy.[36] Michele also has multiple prior state drug convictions as well as another federal drug conviction, separate from the conviction for which he is currently incarcerated, for distribution of fifty grams or more of cocaine.[37]

The nature and circumstances of the instant offense combined with Michele's criminal history demonstrate that he would be a danger to the community if released. *Cf. Perdigao*, 2020 WL 1672322, at *4 (finding that the defendant was not a danger to the community, because although he pled guilty to a number of serious crimes, none were crimes of violence or offenses involving controlled substances).

---

[35] R. Doc. No. 98, at 4–5, 7.
[36] R. Doc. No. 124, at 12 ¶ 54; R. Doc. No. 185, at 3:15–17.
[37] R. Doc. No. 124, at 14–16 ¶¶ 73–76; *see also* R. Doc. No. 98, at 8.

## III.

After reviewing the § 3553(a) factors[38] and considering the applicable policy statement by the Sentencing Commission, the Court does not find that there are compelling or extraordinary reasons warranting a reduction of Michele's sentence.

Accordingly,

**IT IS ORDERED** that Michele's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **DENIED**.

**IT IS FURTHER ORDERED** that Michele's request for an early release to home confinement is **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, August 12, 2020.

                                                **LANCE M. AFRICK**
                                    **UNITED STATES DISTRICT JUDGE**

---

[38] The Court has specifically considered 18 U.S.C. § 3553(a)(1), (2)(A)–(C), and (5).