**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 13-160** |
| **SAM MICHELE, III** | **SECTION I** |

## ORDER & REASONS

Before the Court are defendant Sam Michele, III's ("Michele") second motion[1]

for compassionate release and motion[2] for reduction in sentence. The government

opposes the motions.[3] For the following reasons, the motions are denied.

## I.

On December 19, 2013, Michele pled guilty to count one of a superseding

indictment, which charged him with conspiracy to possess with the intent to

distribute five kilograms or more of cocaine hydrochloride in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(A), and 846.[4] This Court sentenced Michele to a term of 180 months

in the custody of the Bureau of Prisons ("BOP") and a ten-year term of supervised

---

[1] R. Doc. No. 263.
[2] R. Doc. No. 264. In this motion, Michele requests a reduction of his sentence because
the facility where he is housed suspended many of its educational and religious
offerings due to COVID-19. Consequently, Michele asserts that he is suffering a
hardship in prison because he cannot avail himself of the programs that will allow
him to better himself while in prison.
[3] R. Doc. No. 268.
[4] R. Doc. No. 94; R. Doc. No. 32, at 1–2.

release.[5] Michele's projected release date is April 26, 2024, and he is currently housed at Yazoo City Low FCI.[6]

Michele filed his first motion[7] for compassionate release in July 2020. The Court denied the motion.[8] In his second motion for compassionate release, Michele raises largely the same arguments that he raised in his first motion.

## II.

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). This rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[9] For such a motion to be properly before the Court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, *whichever is earlier*[.]" *Id.*; § 3582(c)(1)(A) (emphasis added).

The Court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c). The Court

---

[5] R. Doc. No. 167, at 2–3.
[6] R. Doc. No. 268, at 7.
[7] R. Doc. No. 256.
[8] R. Doc. No. 261.
[9] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the Bureau of Prisons ("BOP")—not defendants themselves—could move for compassionate release. The First Step Act changed that, but the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of the statements now contradict 18 U.S.C. § 3582(c)(1)(A).[10]

However, the Fifth Circuit recently clarified that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

---

[10] For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons[.]"); *see also United States v. Perdigao*, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy).

Nonetheless, the Fifth Circuit has also recognized that the policy statement may still "inform[ ] [its] analysis." *Thompson*, 984 F.3d at 433.

## III.

### A. Exhaustion of Administrative Remedies

Section 3582 allows a court to consider a defendant's motion for modification of a term of imprisonment only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). Failure to satisfy this prerequisite is not jurisdictional, but is a mandatory claim-processing rule that must be enforced if invoked by the government. *United States v. Franco*, 973 F.3d 465, 465–69 (5th Cir. 2020). The defendant bears the burden of demonstrating that he has exhausted administrative remedies. *United States v. Metz*, No. 92-469, 2020 WL 2838593, at *2 (E.D. La. June 1, 2020) (Africk, J.).

"For a petitioner's request to the warden to exhaust administrative remedies in accordance with § 3582(c)(1)(A), the request must be premised on the same facts alleged in the corresponding motion filed with the court." *United States v. Samak*, No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020) (Morgan, J.); *see also United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021) (defendant had not exhausted his claim where his request to the warden "stated, *inter alia*, he suffered

from an unspecified 'terminal medical condition'" and "did not discuss the conditions referenced in his subsequent § 3582(c)(1)(A) motion").

The government, in preparing its response to Michele's motion for compassionate release, obtained a general denial of the defendant's request for compassionate release, issued by the Bureau of Prisons on December 28, 2021.[11] The government was an unable to obtain a copy of the request for compassionate release that Michele submitted to the BOP, nor has Michele provided one.[12] Therefore, it is not clear whether Michele raised the same claims in his request to the BOP as he raises in the present motion, and thus not clear whether he exhausted administrative remedies as to each claim in the present motion. However, the government has agreed to waive its argument regarding exhaustion of administrative remedies in this case.[13] Accordingly, the Court will address Michele's request on the merits.

## B. Extraordinary and Compelling Reasons

A defendant must present extraordinary and compelling reasons justifying his compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i). The Sentencing Commission's policy statement "informs" this Court's analysis of whether LeBlanc has presented such reasons. *Thompson*, 984 F.3d at 433 (citing U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1); *Perdigao*, 2020 WL 1672322, at *2. The policy statement provides four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age,

---

[11] R. Doc. No. 271, at 1 (citing R. Doc. No. 268-3).
[12] *Id.*
[13] *See id.* at 1–2.

5

(3) family circumstances, and (4) 'other reasons.'" *Thompson*, 984 F.3d at 433 (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A).

Michele states that he has asthma, and that he only has one kidney.[14] As the government observes, Michele's BOP medical records do not reflect that he has ever been treated for asthma or complained of respiratory problems.[15] While Michele's medical records confirm that he has one kidney, the only mention of his kidney states that Michele "reports he is doing well and denies any urinary problems. He voices no complaints at this time."[16]

Accordingly, Michele has failed to establish that he is "suffering from a serious physical or medical condition . . . that substantially diminishes [his] ability . . . to provide self-care within the environment of [his] correctional facility." U.S.S.G. § 1B1.13 cmt. n.1; *see United States of America v. Sarah Paxton*, No. 17-121, 2020 WL

---

[14] R. Doc. No. 263, at 1.

[15] *See* R. Doc. Nos. 260-4, 268-4. Michele's presentence investigation report similarly does not mention that he suffers from asthma. Michele reported being in good physical condition with the exception of a history of rheumatoid arthritis. *See* R. Doc. No. 124, at 21 ¶ 106.

[16] R. Doc. No. 268-4, at 40.

4498832, at *2 (W.D. La. Aug. 4, 2020) (holding that the defendant failed to meet her burden of showing entitlement to a sentence reduction when she "claim[ed] to have a history of severe asthma with occasional flare-ups" but provided no evidence of this condition); *United States v. Pagan Zapata*, No. 18-235, 2020 WL 4464660, at *2 (N.D. Tex. Aug. 3, 2020) (finding that the defendant's asthma did not constitute an extraordinary and compelling reason for release because, although he reported having asthma to the Court before his sentencing, he failed to provide recent medical records supporting his claim that the illness severely worsened while in BOP custody); *United States v. Delgado*, No. 17-242, 2020 WL 2542624, at *3 (N.D. Tex. May 19, 2020) (asserting that records are a necessity in cases like this one because the Court "must consider every prisoner individually and [is] cautious about making blanket pronouncements that [particular] categories of prisoners . . . warrant compassionate release, even given the unique circumstances of the COVID-19 pandemic"); *see also United States v. Curry*, No. 10-111, 2020 WL 4201646, at *2 (E.D. La. July 22, 2020) (Vance, J.) ("Even assuming [the defendant] is afflicted with [severe asthma, hypertension, high cholesterol, and PTSD], none places him on an 'end of life' trajectory; nor do these conditions 'substantially diminish[] [his ability] to provide self-care within the environment of a correctional facility' as the Guidelines provide.") (quoting U.S.S.G. § 1B1.13, cmt. n.1(A)).

Michele states that his mother and daughter both have cancer.[17] These circumstances similarly do not warrant compassionate release. Under the guidelines,

---

[17] R. Doc. No. 264, at 1.

the death or incapacitation of the caregiver of a defendant's minor child qualifies as an extraordinary or compelling reason for release pursuant to 18 U.S.C. § 3582(c)(1)(A). However, Michele's 2014 presentence investigation report stated that he had two daughters, ages 12 and 18, at the time of the report[18]; therefore, his daughters are not minors. And, while the Court understands Michele's desire to care for his mother, this is not a case in which he is the only available caregiver for a minor child or registered partner or spouse, as necessitated by the policy statement. *See* U.S.S.G. § 1B1.13, cmt. n.1(C)); *United States v. Crandle*, No. 10-35, 2020 WL 2188865, at *2 (M.D. La. May 6, 2020) (holding that a defendant's need to care for his elderly, ailing parents was not an extraordinary and compelling reason to reduce his sentence); *United States v. Ingram*, No. 14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("While the Court empathizes with the Ingram family's difficult situation and understands that Mrs. Ingram's medical conditions are no doubt serious, family circumstances that constitute 'extraordinary and compelling reasons' simply do not include Ingram's mother. Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

Michele's concerns regarding COVID-19 also do not warrant a reduction of his sentence. Michele has received three doses of the COVID-19 vaccine.[19] *See, e.g.*, *United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021) (Barbier, J.) (denying relief where "[d]efendant has already received the Pfizer COVID-19 vaccine"

---

[18] R. Doc. No. 124, ¶ 103.
[19] R. Doc. No. 268-4, at 70.

that is "highly effective at preventing COVID-19 and may also reduce the risk of serious illness in the case of a COVID-19 infection"). Additionally, BOP is undertaking measures to curb the spread of COVID-19 and to limit inmates' risk of contracting it.[20] *See United States v. Zywotko*, No. 19-113, 2020 WL 1492900, at *2 (M.D. Fla. Mar. 27, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13.") (quoting *United States v. Eberhart*, No. 13-00313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020)); *United States v. Gileno*, No. 19-161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); *United States v. Emmons*, No. 16-98, 2020 WL 3086606, at *2 (S.D. Miss. June 10, 2020) ("Were such concerns sufficient, every federal prisoner would be entitled to a sentence reduction under § 3582(c)(1)(A).").

While the Court is alert to the risks of COVID-19 infection in correctional facilities, Michele has also not demonstrated that BOP's response to the COVID-19 pandemic and the protocols it has implemented to curtail the spread of the virus are inadequate. Moreover, the existence of COVID-19 at Yazoo City Low FCI alone

---

[20] *See* R. Doc. No. 268, at 6–7.

cannot independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

### C. Safety to Others and the Community

Even if the Court were to find that Michele's circumstances presented extraordinary and compelling reasons to grant compassionate release, he still has not demonstrated that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires the Court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

In the factual basis for the plea agreement, pursuant to which Michele is now incarcerated, he agreed that he was responsible for purchasing and/or distributing at least fifteen kilograms of cocaine and that he continued to run his drug trafficking operation from jail by instructing someone to collect money he was owed for previous cocaine sales.[21] The presentence investigation report, to which Michele raised no objections, concluded that Michele was the leader and organizer of the conspiracy.[22] Michele also has multiple prior state drug convictions as well as another federal drug conviction, separate from the conviction for which he is currently incarcerated, for distribution of fifty grams or more of cocaine.[23] Additionally, Michele's presentence

---

[21] R. Doc. No. 98, at 4–5, 7.
[22] R. Doc. No. 124, at 12 ¶ 54; R. Doc. No. 185, at 3:15–17.
[23] R. Doc. No. 124, at 14–16 ¶¶ 73–76; *see also* R. Doc. No. 98, at 8.

investigation report states that his probation with respect to a prior offense was terminated unsatisfactorily.[24]

The nature and circumstances of the instant offense combined with Michele's criminal history demonstrate that he would be a danger to the community if released. *Cf. Perdigao*, 2020 WL 1672322, at *4 (finding that the defendant was not a danger to the community, because although he pled guilty to a number of serious crimes, none were crimes of violence or offenses involving controlled substances).

## IV.

After reviewing the § 3553(a) factors—specifically, § 3553(a)(1), (2)(A)–(C), and (5)—and considering the applicable policy statement by the Sentencing Commission, the Court does not find that there are compelling or extraordinary reasons warranting a reduction of Michele's sentence. Accordingly,

**IT IS ORDERED** that Michele's motions[25] for compassionate release and reduction in sentence are **DENIED**.

New Orleans, Louisiana, February 16, 2022.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[24] R. Doc. No. 124 ¶ 74.
[25] R. Doc. Nos. 263, 264.